

# Supreme Court of Missouri
## en banc

State ex rel. John C. Middleton,     )
        Petitioner,  )
             )
vs.              )  **No. SC94325**
             )
Terry Russell,        )
        Respondent.  )

**Per Curiam**

ORIGINAL PROCEEDING IN HABEAS CORPUS

*Opinion issued July 16, 2014*

On May 30, 2014, this Court issued its order setting inmate John C. Middleton's execution for July 16, 2014. As the Eighth Circuit Court of Appeals held in its opinion dated July 15, 2014, if Middleton believes that he is incompetent to be executed and that his execution would violate the Eighth Amendment, he is required to present that claim to this Court before asserting it in the federal courts. *Middleton v. Roper,* No. 14-2667 (July 15, 2014). A petition for a writ of habeas corpus under Rule 91 is a proper means of asserting such a claim in this Court and has been used by inmates facing execution in the past. It was not until July 16, however, after his execution was scheduled to occur, that Middleton asserted his Eighth Amendment claim in this Court for the first time. After careful consideration of Middleton's petition for habeas corpus and the exhibits thereto, this Court denies that petition on the merits for the reasons set forth below.

1

Last week, Middleton filed a motion in this Court seeking a stay of execution and the appointment of a master to gather evidence and make findings regarding whether Middleton is competent to be executed. Though Middleton suggested he may assert an Eighth Amendment claim at some point in the future, Middleton carefully avoided doing so at that time. In support of that motion, however, Middleton offered virtually all of the same evidence on which he now relies in his petition for a writ of habeas corpus. Included in his motion last week was a letter from Middleton's forensic psychiatrist, Dr. Logan. That letter, dated July 2, 2014, includes the following:

> Over time he [Middleton] has developed certain beliefs about his charges and the resulting legal proceedings that are distorted by this paranoia, and may now be indicative of a psychotic delusional disorder. I am exploring whether these beliefs now could significantly color his perception / or relational understanding of his execution.

Plainly, this stops far short of opining that Middleton is suffering from "gross delusions preventing him from comprehending the meaning and purpose of the punishment to which he has been sentenced." *Panetti v. Quarterman*, 551 U.S. 930, 960 (2007). *See also Ford. v. Wainwright*, 477 U.S. 399 (1986).

In his habeas petition now before the Court, Middleton offers much the same evidence that the Court considered in denying his motion for a stay of execution last week. There is one notable addition, however. Rather than continue to rely on the equivocal statements in Dr. Logan's July 2 letter, Middleton now offers a sworn statement from Dr. Logan dated July 14. In this statement, Dr. Logan lists all the information on which he bases the opinions set forth in that statement, including his single encounter with Middleton that occurred on June 16. In stating those opinions, however, Dr. Logan does not state or

2

suggest that he did not have all of this same information when he wrote his July 2 letter, or explain why he was unable to state the opinions he now offers in that letter.

In his July 14 statement, Dr. Logan states:

> With regard to his scheduled execution, while Mr. Middleton can recite the reason it was imposed, he in fact believes his conviction was the result of a conspiracy which included his associates, law enforcement, the courts, prosecutors and his defense attorneys. Furthermore, he shows little to no emotional reaction to his impending execution date but instead believes he will not die while incarcerated but will be cleared on the charges and return to the community.

> In conclusion, it is my preliminary opinion (preliminary in the sense that additional materials and, critically, input from MDOC staff directly familiar with Mr. Middleton, may be available for review and consultation) that Mr. Middleton lacks a rational understanding of the reason for his execution and is therefore not competent to be executed due to a diagnosis of delusional disorder, a psychotic mental illness.

The Court concludes that this evidence – by itself and in conjunction with the other evidence offered in support of Middleton's petition – does not constitute the substantial threshold showing of incompetence required by *Panetti* and *Ford* before he is entitled to a full hearing to determine his competence.

First, Dr. Logan opines that Middleton is delusional because he "believes his conviction was the result of a conspiracy which included his associates, law enforcement, the courts, prosecutors and his defense attorneys." This analysis does not account for the fact that Middleton's lawyers have raised a series of claims asserting that Middleton's trial and appellate counsel were ineffective and that he is an innocent victim of over-zealous prosecutors and illicit "secret deals" between law enforcement officers and prosecution witnesses. That Middleton is now persuaded as to the legitimacy of these claims (despite their having failed to convince any state or federal court) does not make Middleton

3

delusional in the way that renders him incompetent to be executed under the Eighth Amendment.

Dr. Logan's other basis for his opinion is that Middleton "shows little to no emotional reaction to his impending execution date but instead believes he will not die while incarcerated but will be cleared on the charges and return to the community." Even though Middleton's optimism may be misplaced, even illogical, it hardly constitutes proof that he is delusional under *Panetti* and *Ford* in light of the fact that Middleton has faced three or more execution dates since his conviction nearly 20 years ago and has received a stay each time. Moreover, it does not constitute the sort of delusion that *Panetti* and *Ford* declare renders an inmate incompetent to be executed under the Eighth Amendment.

The opinion offered by Dr. Logan, and the other arguments asserted by Middleton, misperceive the Supreme Court's decisions in *Ford* and *Panetti*. There was no question that the inmate in *Panetti* made a sufficient threshold showing of incompetence. *Panetti*, 551 U.S. at 948. That showing included "pointed observations made by two experts the day before petitioner's scheduled execution … [and] references to the extensive evidence of mental dysfunction considered in earlier legal proceedings." *Id.* at 950.

In *Panetti*, the Supreme Court explains that the gravamen of an Eighth Amendment incompetence claim is not that an inmate is delusional, but that the inmate suffers from some "mental illness that is the source of ***gross delusions preventing him from comprehending the meaning and purpose of the punishment to which he has been sentenced***." *Id.* at 960 (emphasis added). The delusions must be such that "they so impair

4

the prisoner's concept of reality that he cannot reach a rational understanding of the reason for the execution." *Id.* at 958.

In *Panetti*, the inmate had a "genuine delusion involving his understanding of the reason for his execution …. [that] recast petitioner's execution as 'part of spiritual warfare ... between the demons and the forces of the darkness and God and the angels and the forces of light.'" *Id*. at 954 (citations omitted). As a result, even though "petitioner claims to understand 'that the state is saying that [it wishes] to execute him for [his] murder[s],' ***he believes in earnest that the stated reason is a 'sham' and the State in truth wants to execute him 'to stop him from preaching***.'" *Id*. at 954-55 (emphasis added).

Nothing in Dr. Logan's statement, or in the other proof submitted with Middleton's petition, even approaches a substantial threshold showing that Middleton suffers from such delusions. Instead, at most, they show that Middleton is delusional as to his innocence and his chances of escaping execution. Middleton plainly understands he is to be executed as punishment because he was found guilty of murdering his three victims; he simply believes he should not have been convicted. Nothing in *Panetti* or *Ford* suggests that an inmate is incompetent to be executed only if he both understands why he is being executed and agrees that the sentence is justified.

Instead, the Court in *Panetti* stated:

> The mental state requisite for competence to suffer capital punishment neither presumes nor requires a person who would be considered "normal," or even "rational," in a layperson's understanding of those terms. Someone who is condemned to death for an atrocious murder may be so callous as to be unrepentant; so self-centered and devoid of compassion as to lack all sense of guilt; ***so adept in transferring blame to others as to be considered, at least in the colloquial sense, to be out of touch with reality***. Those states of mind, even if extreme compared to the criminal population at large, are not what petitioner contends lie at the threshold of a

5

competence inquiry. The beginning of doubt about competence in a case like petitioner's is not a misanthropic personality or an amoral character. It is a psychotic disorder.

*Id.* at 959-60 (emphasis added).

Accordingly, this Court denies Middleton's petition for a writ of habeas corpus on the merits because he has failed to make a substantial threshold showing that he lacks the competence to be executed that the Eighth Amendment demands.

In making the foregoing determination, the Court has considered and rejected Middleton's contention that this Court has no authority to decide for itself whether his petition makes a substantial threshold showing of incompetence and, instead, is bound by the previous determination of the United States District Court on this issue. This argument ignores the requirement that Middleton must raise his claim in this Court before attempting to assert it in the federal courts, as the Eighth Circuit Court of Appeals explained in its July 15 decision vacating the first of two stays granted on that date by the District Court. Today, in an opinion vacating the District Court's second stay,[1] the Eighth Circuit again held:

> The Missouri courts are the proper forum in the first instance for Middleton's claim of incompetency to be executed…. Middleton thus far has declined, perhaps for tactical reasons in light of § 2254(d) [which establishes the degree

---

[1] This second stay was for the stated purpose of giving Middleton time to raise his Eighth Amendment incompetence claim in this Court. Respectfully, this Court does not believe that such a stay was necessary. As both parties knew (and is always the case in these circumstances), this Court stood ready to review any claim that Middleton might assert during the evening before his execution date, including any requests for a stay that Middleton might think are needed because he filed his claims so close to the execution date that the Court may not have sufficient time to consider it. Moreover, the argument that Middleton was not able to prepare and present his Eighth Amendment competency claim to this Court any earlier during the six weeks since his execution date was set on May 30 is not tenable given that Dr. Logan was able to meet with Middleton – for the first and only time – on June 16, more than four weeks ago. Middleton not only had time to file his Eighth Amendment incompetence claim in the wrong court (twice) over the last week or two, but he also had time to file a motion in this Court that referred to and attempted to prove – but steadfastly refused to assert – precisely that claim.

6

of deference federal courts must afford state court findings of fact and legal conclusions], to advance a *Ford* claim before the Supreme Court of Missouri. But that is where the claim must be presented in the first instance. Whatever might be said about possible justifications for Middleton's failure to bring a *Ford* claim until fewer than 48 hours before the scheduled execution, there is no reason why Middleton cannot present a *Ford* claim and a motion for stay of execution to the Missouri courts in light of this court's decision of July 15.

*Middleton v. Roper,* No. 14-2677 (July 16, 2014).

This means that it is for this Court to decide whether Middleton has made a sufficient threshold showing of incompetence in the first instance. Notwithstanding its respect for the District Court, this Court is not bound by that court's premature determination of that issue in a case that the Eighth Circuit has ruled (twice) was not properly before it.

Russell, C.J., Breckenridge, Fischer and Wilson, JJ., concur;
Draper, J., dissents in separate opinion filed; Stith and Teitelman, JJ., concur in opinion of Draper, J.

7

STATE OF MISSOURI-Sct.

I, Bill L. Thompson, Clerk of the Supreme Court of the State of Missouri, certify that the foregoing is a full, true and complete transcript of the order of said Supreme Court, entered of record at the May Session thereof, 2014, and on the 16th day of July, 2014, in the above entitled cause.

Given under my hand and seal of said Court, at the City of Jefferson, this 16th day of July, 2014.

_____, *Clerk*

_____, *Deputy Clerk*

8

STATE OF MISSOURI – SCT.:

I, BILL L. THOMPSON, Clerk of the Supreme Court of Missouri, do hereby certify that the foregoing is a true copy of the order of said court, entered on the          day of          ,          , as fully as the same appears of record in my office.

IN TESTIMONY WHEREOF, *I have hereunto set my hand and affixed the seal of said Supreme Court. Done at office in the City of Jefferson, State aforesaid, this day of          ,          .*

_Bill L. Thompson_ , Clerk

_Cynthia I. Tucker_ , Deputy Clerk

10



# SUPREME COURT OF MISSOURI
# en banc

JOHN C. MIDDLETON,                    )
      Petitioner,          )
              )
              )
v.             )  No. SC94325
              )
TERRY RUSSELL, Warden,                )
Eastern Reception Diagnostic          )
Correctional Center,                  )
      Respondent.          )

## DISSENTING OPINION

I respectfully dissent from the order entered today denying John Middleton's ("Middleton") writ of habeas corpus on the merits.

### Right to a Ford Hearing

I believe Middleton's right to due process is being grossly violated by this Court's order summarily denying him a right to a hearing pursuant to *Ford v. Wainwright*, 477 U.S. 399 (1986) and *Panetti v. Quarterman*, 551 U.S. 930 (2007). *Ford* and *Panetti* set forth the standard for granting a stay of execution when a claim of incompetence has been asserted. While "[a]ll prisoners are at risk of deteriorations in their mental state," the "Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." *Ford*, 477

1

U.S. at 409-10; *Panetti*, 551 U.S. at 943. In *Panetti*, the Court determined that Justice Powell's opinion in *Ford*, containing the narrowest holding, constituted "clearly established" law for what showing is required to stay an execution due to incompetence and the minimum standards a state must provide to a prisoner raising a *Ford* claim. *Panetti*, 551 U.S. at 949. Justice Powell stated:

> Once a prisoner seeking a stay of execution has made a 'substantial threshold showing of insanity,' the protection afforded by procedural due process includes a 'fair hearing' in accord with fundamental fairness…. This protection means a prisoner must be accorded an 'opportunity to be heard … though a constitutionally acceptable procedure may be far less formal than a trial.'

*Id*. (internal citations omitted).

Here, however, this Court has denied Middleton even a bare modicum of due process. Moreover, Middleton has raised serious allegations concerning the Department of Corrections' obstruction to his access to records and individuals who could discuss his mental health at this critical time.[1] Middleton alleges that despite the DOC's obstructionist policies, he has been able to make a substantial threshold showing that he is incompetent to be executed. *This claim is one that could not be raised until an execution date was set*, which did not occur until May 30, 2014. The federal district court did not authorize funds for Middleton to retain a psychiatrist to conduct a competency evaluation until after an execution date was

---

[1] Since Missouri has resumed executing prisoners on a monthly basis, this Court has received several motions alleging continued and repeated lack of cooperation by the DOC that interferes with the inmates' ability to make their cases for claims such as these. While there may be no constitutional interference, this Court cannot be certain without judicial inquiry into the matter.

set.  The short time that has elapsed since the execution date was set and today is insufficient to conduct a thorough investigation into Middleton's competency to be executed.

Despite the shortened period of time, Middleton has submitted several affidavits that satisfy the threshold showing required under *Ford*.  Middleton included affidavits from other prison inmates who testified to Middleton's increasingly bizarre behavior.  Middleton's defense counsel submitted her own affidavit outlining her observations of Middleton's current mental status and his belief that he will be exonerated and will return home to Iowa.  Finally, Middleton's counsel retained a psychiatrist, Dr. William Logan, to evaluate him since the time his execution date has been set and when funds were authorized for his services.  Dr. Logan has rendered a preliminary opinion, which is due in large part to the absence of additional materials and input from DOC staff directly familiar with Middleton's behavior.  Although preliminary in nature, Dr. Logan's observations are sufficient to meet the substantial threshold showing to entitle Middleton to a *Ford* hearing.  Dr. Logan has determined Middleton exhibits symptoms of psychosis and that his mental state is characterized by:

> [R]ambling, tangential speech; rapid switching to irrelevant topics; auditory hallucinations to which he responds, at times observed by others; suspiciousness and preoccupation with irrelevant minor details which hinders the efforts of his defense attorneys, a pervasive distrust of the legal system including the efforts of previous attorneys on his behalf; and delusional ideas generally persecutory and grandiose in nature.

3

Dr. Logan further explains Middleton suffers from a cognitive disorder, panic disorder, depression, anxiety, and bipolar disorder. With respect to the pending execution, Middleton can "recite the reason it was imposed, he in fact believes his conviction was the result of a conspiracy which included his associates, law enforcement, the courts, prosecutors, and his defense attorneys." Further, Middleton demonstrates little emotional reaction and "believes he will not die while incarcerated by will be cleared on the charges and return to the community." Dr. Logan concludes that Middleton "lacks a rational understanding of the reason for the execution and is therefore not competent to be executed due to a diagnosis of delusional disorder, a psychotic mental illness."

The federal district court found that Middleton has made a substantial threshold showing of incompetence and should be afforded a hearing. I would find likewise under these facts.

*Constitutionality of Section 552.060*

Second, I believe Middleton has raised grave concerns regarding the constitutionality of section 552.060, RSMo 2000. Section 552.060 governs the procedure for determining whether a condemned prisoner is competent to be executed. Section 552.060.1 prohibits the execution of any prisoner who "lacks capacity to understand the nature and purpose of the punishment about to be imposed upon him or matters in extenuation, arguments for executive clemency or reasons why the sentence should not be carried out." Section 552.060.2 provides that if the DOC director has "reasonable cause to believe" that a condemned

4

prisoner has a mental disease or defect excluding fitness for execution, the director has a duty to notify the governor immediately, who must then issue a stay if there is insufficient time to conduct a mental evaluation prior to the execution date.[2]

After the director makes a finding and notifies the statutorily enumerated state authorities, the circuit court where the prisoner is incarcerated "shall conduct an inquiry into the mental condition of the offender" after pertinent mental examinations have been made. Section 552.060.3. If the circuit court determines the prisoner is competent, then a new execution date is set; if not, he or she is transferred to a mental hospital for treatment. Section 552.060.4. The statute further provides, "Nothing in this chapter shall be construed to limit the governor or any court in the exercise of any of their powers in any manner under the law or Constitution of Missouri." Section 552.060.5.

I believe Middleton has raised a timely constitutional challenge to the validity of section 552.060, which should be addressed by this Court after appropriate briefing and oral argument. Middleton raises persuasive arguments alleging section 552.060 does not comport with the minimum due process dictates of *Ford* and *Panetti*. First, Middleton points out the fundamental structural flaw in the statute is that only the DOC director has the capacity to initiate the process relating to a determination of the sanity of the condemned prisoner. A plain

---

[2] The director must also notify the director of the department of mental health, the prosecuting attorney of the county where the prisoner was tried, the circuit court where the prisoner is incarcerated, and the attorney general. Notably absent from this list is the prisoner's defense counsel.

5

reading of the statute shows that it is incumbent upon the director to initiate the proceedings, if in his discretion, he determines there is "reasonable cause to believe" a prisoner has a mental disease or defect that renders the prisoner incompetent to be executed. In *Ford*, the Court criticized Florida's statutory scheme which consolidated the decision of whether a prisoner is competent to the governor and other members of the executive branch. The Court stated, "In no other circumstance of which we are aware is the vindication of a constitutional right entrusted to the unreviewable discretion of an administrative tribunal." *Ford*, 477 U.S. at 416. This Court has not addressed whether the statute cloaks the director with unfettered and unreviewable discretion, but a cursory reading of the statute places the characterization of the prisoner's mental status solely in the hands of the director.[3] This serious issue requires review by this Court en banc to ensure Missouri does not commit the reprehensible and unconstitutional execution of an incompetent prisoner.

---

[3] I am also troubled by the allegation Middleton has raised that the State has now changed its position on whether section 552.060 or a writ of habeas corpus is the appropriate means to raise the competency issue. Middleton alleges the State has asserted previously that the statute was the appropriate means when answering the same claim raised by Joseph Franklin in November 2013.

Therefore, I would issue the writ of habeas corpus and issue a stay of execution so that Middleton could have a *Ford* hearing to determine his competence to be executed.

_____

GEORGE W. DRAPER III, JUDGE